UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TERESA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:00CV00018 AGF |
| ) | |
| CYNDI PRUDDEN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for summary judgment filed by John Lanon ("Lanon"), and the joint motion for summary judgment filed by the remaining Defendants.[1] For the reasons set forth below, Lanon's motion shall be denied, and the remaining Defendants' motion shall be granted.

## BACKGROUND

This case is before the Court on remand from the Eighth Circuit Court of Appeals. Teresa Williams commenced this action under 42 U.S.C. § 1983 on June 16, 2000, claiming that while she was a Missouri inmate incarcerated at Women's Eastern Reception Diagnostic Correctional Center (WERDCC), Lanon, a correctional officer, sexually molested her. In addition to Lanon, Plaintiff named four supervisors at WERDCC as Defendants: Associate Superintendent Cyndi Prudden; Classification

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

Supervisor Bob Cabowski; Superintendent Al Leubbers; and Associate Superintendent Stewart Epps.[2]

Plaintiff alleges in her amended complaint (Doc. #26) that on one occasion in January 1999, Lanon forcibly ground his pelvis against Plaintiff's buttocks; and that a few days later, without warning or consent, he grabbed Plaintiff's breast, verbally demanded sexual favors, made physical sexual advances, and attempted to force himself upon Plaintiff. Plaintiff also alleges that Lanon and other prison employees had previously engaged in a pattern of similar conduct toward other inmates, and that these inmates had filed complaints, but the four supervisory Defendants failed to take corrective actions until after Plaintiff was molested. Plaintiff alleges that as a result of Lanon's conduct, she suffered bodily and emotional harm. She seeks actual and punitive damages.

The amended complaint contains eight counts. In Count I, Plaintiff claims that Lanon violated her rights under the Eighth and Fourteenth Amendments. In Count II, she claims that the four supervisory Defendants violated her constitutional rights by failing to take corrective action. Count III claims that all Defendants conspired to violate Plaintiff's constitutional rights. Count V is against the supervisory Defendants and alleges that they were deliberately indifferent to Plaintiff's rights in their failure to properly hire, train, and supervise employees, including Lanon. The remaining counts are supplemental claims arising under Missouri law: intentional infliction of emotional distress and battery,

---

[2] Several other supervisory Defendants were dismissed by the Court before service of process, pursuant to 28 U.S.C. § 1915(e).

against Lanon (Count IV); conspiracy to commit battery, against all Defendants (Count VI); intentional infliction of emotional distress, against all Defendants (Count VII); and negligent infliction of emotional distress, against all Defendants (Count VIII). Plaintiff voluntarily dismissed Counts III and VI (the conspiracy claims).[3]

The Court[4] dismissed Count I for failure to state a claim and declined to exercise supplemental jurisdiction over the state law claims against Lanon, dismissing those claims without prejudice. By separate Order, the Court dismissed the federal claims against the supervisory Defendants, as those claims were dependent upon a finding that Lanon had violated Plaintiff's constitutional rights. The Court then dismissed the state law claims against these Defendants without prejudice.

On appeal, the Eighth Circuit held that Plaintiff stated an Eighth Amendment claim against Lanon, and that he was not protected by qualified immunity. Williams v. Prudden, 2003 WL 21135681, at *1 (8th Cir. 2003). The Court also reversed the dismissal of Plaintiff's Eighth Amendment claims against the four supervisors, citing Howard v. Adkinson, 887 F.2d 134, 137-38 (8th Cir. 1989) (supervisors are liable when their corrective inaction amounts to "deliberative indifference" or "tacit approval" of violative practices). Williams, 2003 WL 21135681, at *2. The appellate court directed

---

[3] The amended complaint does not clearly delineate which counts are brought under the federal constitution and which are brought under state law. Plaintiff has taken no issue with the above description of her claims, which is how they have been characterized in other documents in this case.

[4] The Honorable Lawrence O. Davis, United States Magistrate Judge.

this Court to revisit on remand whether supplemental jurisdiction should be exercised over the state law claims. Id.[5]

The record on summary judgment now includes Plaintiff's deposition testimony, in which she presents the following version of events. On January 25, 1999, Plaintiff left the kitchen food service area of the prison where she was working, and while she was in the check-in/check-out area, where inmates were searched before entering and leaving the food service area, she bent down to tie her shoe. Lanon came up from behind his desk and ground his pelvis on Plaintiff buttocks, asking her if she liked it. When she told him that she did not, he made it seem like he was just playing, and so Plaintiff laughed it off and went to her room. Plaintiff told her roommate about the incident but did not report it to any prison officials. Plaintiff was shocked at what had happened because Lanon, who had searched her many times in the past as she entered and left the food service area, had never touched her in an inappropriate manner before. Plaintiff testified that she was not physically injured, but that she felt emotionally distressed.

On January 31, 1999, when Plaintiff arrived at work, Lanon engaged her in conversation, which Plaintiff described as a nice conversation about her and her family. Plaintiff then went into the bakery cooler to stack butter. Lanon came into the cooler, surprising her, and started to touch her breasts with both hands. Plaintiff turned around to

---

[5] The Eighth Circuit also directed the Court to reconsider Plaintiff's earlier request to file a second amended complaint. Following remand, Plaintiff affirmatively stated that she wished to proceed on her first amended complaint, and withdrew her alternative request to file a second amended complaint. See Doc. #76.

face Lanon, pushed him away, and told him not to touch her again, stating that she was not like the other female inmates. Lanon said that he knew Plaintiff liked it and was playing hard to get, and he grabbed at her breasts aggressively, about three more times. The last time he grabbed her was "more or less like a struggle," and when Plaintiff pushed him away, she fell back bruising her arm. Plaintiff then made it out the door to an eating room. When asked at her deposition how long this incident lasted, Plaintiff responded, "I don't recall. If it was left up to me, it seemed like it was forever, because it hurt." Pl.'s Depo. at 31-43 (Pl.'s Ex. 1 to Memo is Opp. to Supervisory Defs.' Mot. for Sum. J.)

That same day, Plaintiff reported the incident to another correctional officer, who reported it to his supervisor. Plaintiff was taken to a prison nurse who gave her ice packs for her breasts, which were swollen. An investigative interview was conducted, and Plaintiff was placed in administrative segregation for her safety. Id. at 57-60, 74. On February 4, 1999, Lanon was transferred to vehicle patrol, and Plaintiff was returned to general population. On May 4, 1999, Lanon resigned.

Defendant's exhibits include copies of the Missouri Department of Corrections Policy Handbook and several policy statements which employees receive as part of their training and which prohibit sexually suggestive comments towards inmates and sexual personal contact with inmates. Defs.' Exs. M, N, & O. Each of the four supervisory Defendants has attested that he or she was not involved in the hiring of Lanon. Def.'s Exs. AA, BB, CC, & DD.

Plaintiff has presented evidence that Lanon had touched another female inmate, Rae Ann Kirkpatrick, in a sexually inappropriate manner approximately two and one-half weeks before January 25, 1999. The record contains a handwritten inmate statement by Kirkpatrick dated January 10, 1999, in which she wrote that at 6:00 a.m., in conducting a pat-down search, Lanon "came all the way up in the side of my leg touching my private area. Also while doing the search around my breast his hands were up right rubbing across my breast." Defs.' Ex. H, p. 17. Another handwritten report by Kirkpatrick dated January 15, 1999, states that that morning Lanon asked her why she looked so lonely, and that she knew what he wanted. Defs.' Ex. H, p. 8.

Kirkpatrick spoke to correctional officer Larry Clark about this incident, and the record includes a copy of an interoffice communication dated January 15, 1999, from Clark to a supervisor, with a copy sent to Defendant Prudden. The memo stated that Kirkpartrick had reported Lanon's above statements to Clark. Clark further wrote that he "talked to Mr. Lanon COI about some letters that were received from Inmates Kirkpartrick . . . and inmate Williams . . . had written [sic]. Mr. Lanon COI laugh off [sic] the letters stating they were a lie [sic]." Pl. Ex. 3.[6]

The record also contains a typed interoffice communication from Clark to Prudden, dated January 15, 1999. In this memo, Clark wrote that at approximately 9:00 a.m. on that day, Kirkpatrick reported that Lanon had made "inappropriate remarks" to

---

[6] It is unclear from the record what letters Clark was referring to. Clark's own deposition, Pl.'s Ex. 2, does not shed any light on the matter.

her, that this had occurred several times, "and he'd also placed his hands on her in an inappropriate way." Clark added that the information was turned over to the investigation office. Defs.' Ex. H, p. 18. On January 29, 1999, two days before Plaintiff's second encounter with Lanon described above, Defendant Leubbers formally requested an investigation into Kirkpatrick's allegations that Lanon had made inappropriate remarks to her and had touched her inappropriately. Def.'s Ex. H, p. 7.

Plaintiff testified that after she was released from administrative segregation, at least seven inmates came to her and told her that Lanon had engaged in unwanted sexual conduct with them, but they had been afraid to report him to his supervisors. Pl.'s Depo. at 78-79. Plaintiff also testified that Leubbers told her after she was released from administrative segregation that Lanon had already been under investigation before he accosted Plaintiff, but that there had not been enough time to deal with the situation before the incidents involving Plaintiff. Pl.'s Depo. at 83.

Plaintiff testified that she saw a psychologist many times because of the above-described incidents with Lanon and was prescribed Trazodone and Prozac for a while. Pl.'s Depo. at 90-93.

## DISCUSSION

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. The court "must not weigh evidence or make credibility determinations." Kenney v. Swift Transp., Inc., 2003 WL 22359230, at *2 (8th Cir. Oct. 17, 2003). The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**Claims Against Defendant Lanon**

It is well established that physical sexual abuse of an inmate violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. As stated by the

8

Eighth Circuit in Berryhill v. Schriro, 137 F.3d 1073 (8th Cir. 1998), "[c]ertainly, sexual or other assaults are not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable damages." Id. at 1076. To prove an Eighth Amendment violation under § 1983 for sexual assault by a prison guard, a plaintiff must show "as an objective matter, that the alleged abuse or harassment caused pain and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." Berry v. Oswalt, 143 F.3d 1127, 1130 (8th Cir. 1998) (quoted cases omitted).

Defendants rely on Berryhill in support of their argument that Plaintiff did not meet her burden of establishing sufficient injury to survive a motion for summary judgment. In Berryhill, the plaintiff alleged that he was approached by four male prison employees; that one grabbed him by the buttocks with one hand briefly; and that while the plaintiff was saying that he "didn't play this," another of the four also grabbed the plaintiff's buttocks for a moment. Berryhill,137 F.3d at 1075. The plaintiff pulled away and left the area feeling that the four defendants had intended to embarrass him. The incident lasted a minute at the most. The plaintiff claimed that he suffered asthma attacks and emotional distress as a result of the incident. Id.

In affirming the district court's grant of summary judgment to the defendants, the Eighth Circuit stated that while the defendants' behavior was inappropriate, there was no evidence that the plaintiff "suffered anything more than a brief unwanted touch on his buttocks." Id. at 1076. The Court concluded that it would be "a distortion of the

9

evidence" to characterize the evidence as a sexual assault, even viewing the evidence in the light most favorable to the plaintiff. The Court pointed to the plaintiff's deposition testimony that he thought the defendants were trying to embarrass him, as opposed to trying to rape or sexually assault him, and that the incident lasted "mere seconds" and was not accompanied by any sexual comments. Id.

The court in Berryhill further noted that "no objectively serious injury (either physical or psychological) was shown to have arisen from the incident," noting that in his deposition, the plaintiff asserted that he was humiliated and paranoid, but he never sought medical attention for any psychological or emotional difficulty. Id. The Court explained as follows: "Demonstrating a serious or permanent injury is not required to make out an Eighth Amendment claim, but some actual injury and pain must be shown and the extent of the injury and pain suffered are relevant concerns in determining whether the conduct amounts to cruel and unusual conduct." Id. at 1076-77.

This case is readily distinguishable from Berryhill. Here, taking the evidence in the light most favorable to Plaintiff, Lanon touched Plaintiff on two separate occasions in an inappropriate sexual manner. Lanon's actions on both occasions were accompanied by sexual comments, making the sexual nature of the incidents clear. The second occasion actually involved a struggle, with Plaintiff physically fending off Lanon's repeated attempts to grab her breasts. Furthermore, accepting Plaintiff's evidence as true, the January 31, 1999 incident resulted in an abrasion to Plaintiff's arm and swollen breasts, as well as the necessity for counseling with a psychologist.

While Lanon's conduct at issue here may not be as continuous or egregious as that in other cases in which plaintiffs have withstood summary judgment, see, e.g., Watson v. Jones, 980 F.2d 1165, 1166 (8th Cir. 1992) (reversing a grant of summary judgment where the plaintiffs alleged that prison officials were engaging in almost daily, sexually harassing pat-down searches), the Court concludes that Plaintiff's evidence of Lanon's conduct and of her own injuries is sufficient to create a jury question on her Eighth Amendment claim against Lanon.[7]  Cf. Berry, 143 F.3d at 1133 (Eighth Amendment claim recognized against prison guard who attempted to perform routine pat-downs on plaintiff, propositioned her for sex, intruded upon her while she was not fully dressed, and subjected her to sexual comments; actions which were "repeated and improper, an abuse of the power [defendant] held over inmates").

**Claims against the Supervisory Defendants**

The supervisory Defendants argue that they are entitled to summary judgment because Plaintiff has failed to establish that they knew that Lanon posed a risk to Plaintiff.  As the Eighth Circuit noted in its opinion remanding this case, supervisors are liable under § 1983, when their corrective inaction amounts to "deliberative indifference" or "tacit approval" of violative practices, quoting Howard, 887 F.2d at 137-38.  The court in Howard explained as follows:

---

[7] Defendant Lanon does not raise a defense based on qualified immunity, but on these facts he would not be entitled to such immunity.  See Williams, 2003 WL 21135681, at *1.

> Proof of actual knowledge of constitutional violations is not, however, an absolute prerequisite for imposing supervisory liability. This court has consistently held that reckless disregard on the part of a supervisor will suffice to impose liability. This requires more than mere negligence yet less than malicious or actual intent. Thus, the issue is not whether the appellants had actual knowledge of the violations, but whether they knew or should have known of them. . . . A single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability. However, as the number of incidents grow, and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible.

Id. at 138 (quoted cases omitted).

The only basis Plaintiff presents for denying the supervisory Defendants' motion for summary judgment is the evidence of Kirkpatrick's complaints against Lanon, which predated Plaintiff's alleged encounters with him. Even assuming that the supervisory Defendants must be charged with knowledge of Kirkpatrick's January 10, 1999 inmate statement, the Court concludes that the evidence surrounding Kirkpatrick's charges against Lanon is insufficient to impose liability on the supervisory Defendants for failure to take action that would have prevented Plaintiff's injuries.

As stated in Howard, "[a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability." Howard, 887 F.2d at 138. The record demonstrates that appropriate action was taken with respect to Kirkpatrick's charges within a reasonable time frame. Kirkpatrick was separated from Lanon, and a formal investigation was initiated within approximately two and one-half weeks. There is no evidence that the supervisory Defendants had notice of any similar problems between Lanon and other inmates, making this two and one-half week delay

unconstitutionally unreasonable. The supervisory Defendants had no reason to know of the initial incident involving Plaintiff and Lanon and took appropriate corrective action, including removing Lanon from all contact with the inmates and conducting a full investigation, within days of Plaintiff reporting Lanon's behavior toward her. The Court notes that Plaintiff makes no claims against the supervisory Defendants related to the handling of her complaints against Lanon once she reported them.

     The same result is reached on Plaintiff's claims that the supervisory Defendants violated Plaintiff's rights by failing to properly hire and train Lanon. It is undisputed that none of the supervisory Defendants were involved in the hiring of Lanon, and the record is devoid of facts which would have alerted these Defendants that the correctional officers at the prison in general, or Lanon in particular, were inadequately trained. In fact, it is uncontroverted that all prison employees were informed that the kind of behavior giving rise to this action was prohibited. In sum, based on the record, no reasonable fact finder could conclude that the supervisory Defendants violated Plaintiff's constitutional rights by failing to properly hire, train, or supervise Lanon. See Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001) (summary judgement for supervisory prison officials affirmed where there was no evidence that they had notice that training procedures and supervision of correctional officers were inadequate and likely to result in a constitutional violation).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant John Lanon's motion for summary judgment is **DENIED**. [Doc. #112]

**IT IS FURTHER ORDERED** that the joint motion for summary judgment filed by Defendants Cyndi Prudden, Bob Capowski, Al Leubbers, and Stewart Epps is **GRANTED**. [Doc. #110]

**IT IS FURTHER ORDERED** that a status conference to set a trial date for the claims remaining in this action shall take place on **Tuesday, September 20, 2005, at 9:00 a.m.**, in Courtroom 9 North.

*/s/ Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of September, 2005.